TALOALEMAAGAO A. LEO, MUAAU M. LEO, MASELINA L. SEMAIA, and on behalf of Themselves and the heirs of FAFAAUA LEO, Plaintiffs and Counter-Defendants,

v.

AFA TOFELE aka AFA TUFELE, SIPAIA VIVI, LOSI IE`U, OFA TOFELE, SULIA VA`A, IVI TUFELE, AFA TUFELE HANA TUFELE, MATUA MILA TALO, VITO TALO, TALIA TALO, FA`AUA TALO FAIAI, and Their Families & DOES 1-10, Defendants and Counterclaimants.

High Court of American Samoa
Land and Titles Division

LT No. 36-03

December 16, 2005

Before RICHMOND, Associate Justice; MAMEA, Associate Judge; and TAPOPO, Associate Judge.

Counsel: For Plaintiffs and Counter-Defendants, Asaua Fuimaono
 For Defendants and Counterclaimants, Marie A. Ala`ilima

## OPINION AND ORDER

On December 1, 2003, Plaintiffs filed this action to evict Defendant Afa Tofele ("Afa") from approximately 0.71 acres of land called "Tuapa" in the village of Seetaga, American Samoa ("the land"). Plaintiffs Taloalemaagao A. Leo ("Talo") and Muaau M. Leo ("Muaau") claim individual ownership of the land; they are children of their deceased mother, Lafa`aua Leo, and the March 20, 2003 land registration with the Territorial Registrar lists the land as the individually owned land of "Lafa`aua Leo & Children." Afa, on the other hand, asserts that the land is the Taloalemaagao family's communal land and the registration should be voided.[1]

The eviction prayer is further predicated on a lengthy history of mutual confrontations, mostly verbal but some physical, between the original parties. These incidents principally involved on one side Afa, and on the other side Talo, the Taloalemaagao family's current sa`o [head chief], Muaau, Talo's older brother, and more recently Plaintiff Maselina L. Semaia, Muaau's son. At the application hearing on January 23, 2004, we readily agreed to the parties' stipulated preliminary injunction mutually enjoining each party from verbally and physically harassing the other. In a written preliminary injunction entered on February 18, 2004,

---

[1] On October 26, 2004, we inspected the land in conjunction with contempt and amended complaint proceedings and observed the crowded living conditions among the occupants. The main public road in this area bisects the land east to west. Muaau and Plaintiff Maselina L. Semaia have a house near the land's eastern boundary as registered, located immediately east of and close to Afa's house. Both houses are on the northerly mountain side of the bisecting road. Structures on the smaller southerly portion of the land between the road and the ocean beach are either occupied or still in serious hurricane disrepair.

the injunction was confirmed, and by further stipulation expanded to prevent other confrontational activities.

An early trial on February 24, 2004 was initially anticipated, but the Secretary of Samoan Affairs' jurisdictional certificate of irreconcilable dispute was still lacking. In fact, the certificate was not issued until May 24, 2004 and was not filed until September 17, 2004.

Other pretrial proceedings also intervened, including: an extensive evidentiary hearing on October 6, 2004 on Afa's application to hold Muaaau in contempt for violations of the preliminary injunction; the October 21, 2004 amended complaint filing to include as defendants other members of Afa's family who also dispute the registered individual ownership, reside on the land and, after this action was commenced, began to instigate trouble against Plaintiffs; another extensive evidentiary hearing held on November 4, 2004 on Plaintiff's application for further preliminary injunctive relief to enjoin Defendants from an alleged increase in confrontational acts against Plaintiffs; the April 8, 2005 filing of an answer to the amended complaint and counterclaim adding other party counterclaimants;[2] and several continuances of the trial. The three-day trial finally began on April 8, 2005, and concluded on May 19 and 20, 2005. Talo, Afa, and their respective counsel were present throughout the trial.

Having heard the testimony and considered the evidence, we hold that the land is the Taloalemaagao family's communal land and that Afa, as a blood member of the family, and his immediate family members, related by blood or marriage, are entitled to occupy and use the portion of the land customarily assigned to Afa by a former *sa`o*. Furthermore, in light of the historical antagonism and continuing confrontations between the Plaintiffs and Defendants, we permanently enjoin each side from harassing the other side.

---

[2] The answer to the amended complaint and counterclaim was filed the morning of the trial, after Plaintiffs understandably sought a default judgment on their amended complaint. After argument, we took the default judgment motion under advisement and directed the parties to proceed with the trial. We now formally deny the default judgment motion; while we do not excuse the derelict late filing of this answer and counterclaim, the issues are properly determined upon trial on the merits.

## Discussion

The foremost issues we must resolve are: (1) the legality of the land registration; and (2) if the registration is invalid, whether the land is the individually owned land of "Lafa`aua & Children" or the communal land of the Taloalemaagao family.

### I. Validity of Land Registration

The Territorial Registrar's official records in evidence establish the procedures followed for the registration of the land. On July 3, 2000, Talo offered to register the land as the Taloalemaagao family's communal land. The registration offer was accompanied by the survey of the land, Drawing No. 32-8-2000, which Talo requested and Meko Aiumu ("Aiumu") created. Aiumu is a licensed professional surveyor and the Manager of the Survey Division of the American Samoa Government's Department of Public Works. On May 2, 2002, Talo, in his capacity as Seetaga's *pulenu`u* [mayor], and Aiumu collectively issued the "Surveyor and Pulenu`u Certificate." The certificate confirmed that in order to give interested land owners opportunity to be present at the survey, Talo gave oral public notice in Seetaga at a meeting of village chiefs that Aiumu would perform the survey on May 15, 2000. On May 23, 2000, Aiumu, in his capacity as the Survey Division manager, certified that the survey was done in compliance with the applicable American Samoa laws and regulations, and he approved it for registration. These are required steps for surveys of land to be registered. A.S.C.A. §§ 37.0101-.0102.

Notice of proposed land registrations must be made in Samoan and English, and must be posted for a period of 60 days on the Courthouse bulletin board in Fagatogo and at two public places in the village in which or nearest to which the land to be registered is located, and must also be published in a local newspaper once each 30 days during the 60-day notice period. A.S.C.A. § 37.0103(a).

Here, a member of the Territorial Registrar's staff posted the notice of the proposed communal land registration in Seetaga. Talo saw the notice posted in Seetaga and, on July 12, 2000, instructed the Territorial Registrar to change the proposed communal land registration to registration as the individually owned land of "Lafa`aua Leo and Children." The Acting Territorial Registrar complied with Talo's request. Subsequently, the notice of the proposed registration as individually owned land was posted on the bulletin board at the Courthouse and in Seetaga from July 13 through September 11, 2000, a

422

period of 61 days.[3] Two registration notices were forwarded to the *Samoa News* for publication. Newspaper publication was made on July 14, 2000, and August 11, 2000.

 At least two defects vitiate the registration process in this case. First, it is inappropriate to register a land title in the name of a deceased person. Second, the newspaper notice of the proposed registration is seriously deficient. The notice of the proposed individually owned land registration was properly published within the first 30 days of the 60-day notice period. The second notice was also published during the first 30 days, two days shy of the second 30 day period. At first glance, this mistake appears minor and technical in nature, especially considering that the newspaper inadvertently published the communal land notice ahead of time on August 11. However, a closer look reveals that the Legislature added the newspaper publication requirement in 1989 specifically for the purpose of disseminating registration notices more widely to attract interested persons' attention. Thus, the mistake is significant indeed. This court has held that omission of the mandated newspaper notice is fatal to the registration process. *Timu v. McMoore*, 24 A.S.R.2d 84, 86 (Land & Titles Div. 1993).

We acknowledge, however, that those persons most immediately affected by the proposed individually owned land registration, Afa and his family members, did learn of the registration offer and timely objected within the 60-day period. On September 25, 2000, as a result of the objection, the Territorial Register followed the prescribed procedure under A.S.C.A. § 43.0302 and referred the controversy to the Secretary of Samoan Affairs for mediation. The results stemming from the Secretary's efforts is at the crux of the registration validity issue.

On or about December 24, 2002, after Talo advised the office of the Secretary of Samoan Affairs that the parties to the mediation process had settled their differences, the parties met at the office to personally convey their settlement to the Secretary. As a result, the Secretary sent to the Territorial Registrar a form notice, completed with modifications for the controversy at hand and signed by Talo, Muaau, Afa and other objectors, stating that the "Claimant(s)/Counter-Claimant(s) . . . have consented to withdraw their Claim/Objection" to the registration. The word "their" was handwritten and added above the crossed out words "his/her," and the words "Counter-Claimant(s)" and "Objection" were underlined.

---

[3] Affidavits by the Clerk of Court and a Territorial Registrar staff member attested to the posting. A.S.C.A. § 37.0103(b) requires proof of posting in this manner. A technical discrepancy, not material to our present analysis, occurred. The *pulenu`u*, not a Territorial Registrar staff member, must provide the proof of the village posting.

These modifications render some uncertainty as to whether the individually owned land registration was meant to proceed. The Registrar noted this ambiguity and sought the Secretary's assistance to bring the parties to her office for clarification of their intentions. However, nothing materialized from this effort, and at the Registrar's March 17, 2003 directions, the land was registered as the individually owned land of "Lafa`aua Leo & Children" on March 20, 2003.

The parties have markedly different views of what actually transpired at the final hearing before the Secretary on or about December 24, 2002. They also disagree as to the nature of the agreement they entered or intended to enter into on that occasion. Talo and Muaau would, in essence, have us disregard the deficiencies in the registration process and believe that Afa and the other objectors withdrew their objection to the land registration to facilitate the proposed individually owned land registration. On the other hand, the evidence clearly shows that Afa and the other objectors understood that they were withdrawing their objection to the individually owned land registration in response to Talo's and Muaau's agreement to withdraw the proposed registration and fully restore the prior communal land status of the land.

■ We could vitiate the individually owned land registration based on the impropriety of proposing the registration in a deceased person's name, and the lack of two correct proposed registration notices published in the newspaper. *See Timu,* 24 A.S.R.2d at 86. However, it is important to address other concerns of even greater substance for voiding the registration of the land. This case does not involve development of land from virgin bush, the principal basis for the initial judicial creation of individually owned land in the territory. *See Lealaimatafao v. Lautele,* 9 A.S.R.2d 39, 40 (Land & Titles Div. 1988). Rather, before Talo's registration offer, the members of the Taloalemaagao family, including those who are parties to this action, knew and treated the land as the family's communal land. The land is only a portion of the family's communal land "Tuapa."

Talo's individually owned land registration effectively alienated his family's communal land. As such, the safeguards to prevent improvident alienation immediately came into play upon offering the land for individually owned land registration. Before the proposed registration could become effective, it must be submitted to the Land Commission and Governor for review and approval. A.S.C.A. §§ 37.0203-.0204. Talo did not attempt to comply with these requirements. Therefore, at all times relevant to this action, the land was, and still is, the Taloalemaagao family's communal land. The March 29, 2003, registration of the land as the individually owned land of "Lafa`aua and Children" is properly voided, fully restoring the land to its present communal land status.

## I. Communal or Individually Owned Land

█ Having found the registration invalid and for the reasons stated above, we find the land to be the Talealemaagao family's communal land. Accordingly, because Afa is a blood member of the Taloalemaagao family, he is entitled to occupy and use the family's communal land. By this right, Afa was properly assigned a portion of the land under a customary communal land assignment to a family member by Talialemaagao Line, a former *sa`o* of the family. His customary assignment remains in full force and effect, and he and his immediate family members on the assigned portion of the land are entitled to indefinitely continue their occupancy and use of the assigned portion, unless and until a *sa`o* of the family terminates the assignment for an appropriate overriding family purpose, after prior consultation with the family's members. *See Pen v. Lavatai*, 30 A.S.R.2d 10, 18 (App. Div. 1996).

All the parties to this action are members of the same family and as such should work together for the family's best interests. They live together in very close proximity on the land and the close quarters are a fact of their lives. They need to recognize and accept the situation as it is. They need to overcome—to forgive and forget—the past strife between them, and to seriously begin the healing process necessary for their coexistence on the land. We cannot orchestrate this process. Money damages will not adequately remedy any party. More than likely money damages would only exacerbate the situation, and would certainly not motivate peaceful and harmonious relationships among the parties. We can only take a single but prudent legal step to at least encourage movement in this direction by permanently enjoining each party from further harassment of this nature of any opposing party.

### Order

1. The registration of the land on March 20, 2003, as the individually owned land of "Lafa`aua & Children" is void.

2. The customary assignment to Afa of the portion of the land occupied and used by him and his immediate family members remains in full force and effect. Plaintiffs' complaint for Defendants' eviction from the assigned portion is denied and dismissed with prejudice.

3. Each party, and his or her officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him or her, are permanently enjoined from physically and verbally annoying,

molesting, harassing, or in any other manner disturbing the peace of any opposing party.

It is so ordered.